IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EQUAL RIGHTS CENTER | * | |
| | * | |
| v. | * | Civil No. CCB-06-1060 |
| | * | |
| EQUITY RESIDENTIAL, et al. | * | |
| | * | |
| | * | |

******

**<u>MEMORANDUM</u>**

The Equal Rights Center (the "ERC"), a nonprofit civil rights organization, filed this suit in April 2006 against Equity Residential and ERP Operating LP (collectively, "Equity"), a publicly-traded real estate investment trust that employs various joint ventures to develop, design, acquire, manage, and operate apartment complexes throughout the United States. According to the complaint, Equity failed to comply with various provisions of the Fair Housing Act and Title III of the Americans with Disabilities Act when Equity designed and constructed roughly 300 residential housing complexes across the nation. After Equity twice challenged the ERC's standing to obtain the relief it sought, this court held in July 2011 that the claims under the Fair Housing Act could proceed but dismissed the ERC's claims under the Americans with Disabilities Act for want of standing. (ECF Nos. 158, 159.)

Since the ERC filed suit in 2006, two federal district courts in Florida and Indiana have held that owners and managers of covered multifamily dwellings may be liable for violations of the Fair Housing Act even if they were not involved with the design or construction of the properties. Unlike the plaintiffs in those suits, however, the ERC originally sought relief from Equity only in Equity's capacity as the entity that designed or constructed the buildings identified in the complaint. The ERC now seeks leave to amend its complaint to add a count

1

related to Equity's ownership and management of hundreds of properties around the country, including almost 100 properties that were not identified in the ERC's original complaint. The motion has been fully briefed, and no oral argument is necessary. *See* Local R. 105.6. For the reasons set forth below, the ERC's motion for leave to amend will be granted in part and denied in part.

## BACKGROUND

The ERC initiated this action in April 2006. The complaint, which was brought under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, alleges that Equity has engaged in a pattern or practice of inhibiting the access of disabled persons to its properties. The ERC brought suit "to enjoin and remedy ongoing and systematic violations" of the FHA and ADA by Equity "in the design, construction and/or operation" of 300 covered multifamily apartment complexes in numerous states and the District of Columbia. (Compl. ¶ 2, ECF No. 1.)

Since the ERC filed its complaint, this long-running and far-reaching case has progressed in fits and starts, primarily on account of the expansive scope of the suit. In June 2006 Equity moved to dismiss the suit for lack of standing and improper venue. Alternatively, in an effort to trim the scope of the suit, Equity asked the court to sever the ERC's claims with respect to certain properties and to transfer those claims to the districts in which the related properties are located. Judge Andre Davis, to whom this case originally was assigned, denied the motion.[1]

The court then entered a scheduling order in April 2007, allowing discovery to begin. Within several months, however, two significant discovery disputes arose. First, the ERC insisted that Equity provide information about properties that were not expressly identified in the

---

[1] The case was transferred to the undersigned judge in May 2009.

complaint yet "which reflect the wrongful conduct of . . . Equity in the design and construction of non-compliant housing." (ECF No. 176-7.) That dispute culminated with the ERC's December 2007 motion to compel. In June 2008 that motion was granted in part and denied in part by Magistrate Judge Beth Gesner.

Second, Equity sought to scale back the scope of the litigation by eliminating from the case many of the properties that had been identified in the complaint. In an October 2007 letter, counsel for the ERC agreed not to seek information about properties (1) constructed after March 13, 1991, the effective date of the FHA, (2) "[a]cquired by Equity after the completion of construction, through an asset purchase from an unrelated third-party, and where Equity did not have any review and approval rights over design or construction prior to the closing of the asset purchase," (3) sold by Equity to unrelated third parties prior to the initiation of this suit, or (4) that Equity managed for third parties, provided that Equity did not hold any ownership interest in the property. (ECF No. 176-5.) Insofar as Equity sought to exclude specific properties, the ERC requested "some reasonable, objective evidence" that the properties fell within one of the four exempted classes. (*Id.*)

Meanwhile, the ERC's inspections of Equity properties began in September 2007 and continued through the summer of 2009. In August 2009 the court entered a scheduling order directing the parties to fully brief their respective motions for partial summary judgment on certain properties before the end of April 2010. Equity subsequently identified twelve properties on which it intended to move for summary judgment, arguing that it was not liable for alleged FHA and ADA violations on those properties because either (1) the properties had been built before the effective dates of the FHA and ADA, or (2) Equity had not been involved with their design or construction. In November 2009 the parties agreed to amend the complaint to remove

two properties that Equity had neither designed nor constructed, and that same month the parties timely filed their motions for partial summary judgment. In the ERC's opposition to Equity's motion for partial summary judgment, the ERC did not oppose the motion with respect to four properties that were designed and constructed before the effective date of the FHA. (ECF No. 123 at 5 n.1.). And notably, the ERC also did not oppose Equity's motion with respect to the FHA claims against six properties that Equity neither designed nor constructed. (*Id.* at 20–21.)

While those motions were pending, Equity filed a cross-motion for summary judgment in April 2010, again challenging the ERC's standing to bring its claims. The court then granted the parties' joint motion to stay discovery and briefing of the other motions until the court had resolved the issue of standing. In July 2011 the court concluded that the ERC had standing to pursue its FHA claims but could not continue to pursue its ADA claims. At the parties' request, the court subsequently stayed the litigation to enable the parties to engage in settlement negotiations.

Two federal district court decisions ostensibly contributed to the ultimate failure of those negotiations. In April 2011, during the pendency of Equity's cross-motion for summary judgment on the issue of standing, a court in the Middle District of Florida issued an unpublished decision concluding that a defendant may be liable for FHA violations even if that defendant did not participate in the design or construction of the building. *See Harding v. Orlando Apartments, LLC*, No. 11-cv-85-Orl-19DAB, 2011 WL 1457164 (M.D. Fla. Apr. 15, 2011). That court distinguished claims under 42 U.S.C. § 3604(f)(3)(C), which regulates the design and construction of covered dwellings, from claims under 42 U.S.C. § 3604(f)(1) and (f)(2), which proscribes discrimination in the sale or rental of such dwellings or in the provision of services or facilities in connection with such dwellings. The court concluded that both claims were properly

4

pled, noting the absence of case law addressing whether property owners can be liable under § 3604(f)(1) and (f)(2) for offering apartments for rent "despite knowing that those dwellings failed to comply with the HUD regulations." *Id.* at *4.

Ten months later, in February 2012, an Indiana federal court reached the same conclusion. That court, citing *Harding*, held that the plaintiff had laid out a plausible claim of discrimination under § 3604(f)(1) and (f)(2) against a building owner that allegedly knew or should have known that the building it owned had been constructed in violation of § 3604(f)(3)(C). *Nat'l Fair Hous. Alliance, Inc. v. S.C. Bodner Co.*, 844 F. Supp. 2d 940, 944–45 (S.D. Ind. 2012). Citing the Supreme Court's admonition to give the FHA a "generous construction," the court concluded that a building owner could be liable for knowingly or intentionally exploiting the provisions of the FHA to shift the costs of FHA compliance onto renters. *Id.* at 945.

These decisions apparently led to a stalemate in the settlement negotiations. In April 2012 the parties jointly proposed a scheduling order acknowledging the ERC's intent to amend its complaint. Two months later the ERC moved to amend the complaint to redress FHA violations in connection with Equity's ownership, operation, and management of hundreds of apartment complexes, including almost 100 properties that had not been identified in the original complaint. The ERC specifically alleged that Equity knew or should have known that hundreds of its properties "failed to provide the accessible and adaptable features required by the FHA and ADA for persons with physical disabilities." (Proposed Amended Compl. ¶ 8, ECF No. 174-4.)

## ANALYSIS

Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend the complaint once as a matter of course within twenty-one days of service of a responsive pleading or motion to

dismiss. After the twenty-one-day window has elapsed, however, the plaintiff may amend its complaint only with the defendant's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) directs the court to "freely give leave when justice so requires," and federal policy favors "resolving cases on their merits instead of disposing of them on technicalities," *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc), but "trial courts retain the power to ensure that pleadings perform their proper function of framing the issues and facilitating the fair conduct of litigation," *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987). The court should refuse to grant leave "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426. Mere delay does not constitute prejudice, *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986), yet prejudice caused by amendment of the complaint may be exacerbated if the amendment has been offered with undue delay. *See Laber*, 438 F.3d at 427 ("Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing.").

As an initial matter, the delay with which the ERC has proposed this amendment is plainly undue. The ERC could have included in its initial complaint a count related to Equity's ownership and management of these hundreds of apartment complexes. The plaintiffs in *Harding v. Orlando Apartments* and *National Fair Housing Alliance, Inc. v. S.C. Bodner Co.* were not deterred by the novelty of their allegations and pursued injunctive relief and damages under § 3604(f)(1) and (f)(2) before any court apparently had recognized that those provisions were enforceable against apartment complex owners and managers such as Equity. The ERC's sole stated rationalization for the six-year delay that preceded its proposal of this amendment is a recent "major development in the law" (Pl.'s Reply at 7, ECF No. 181)—namely, the extension

6

by two district courts outside the Fourth Circuit—one of which recognized this novel legal theory in an unpublished decision—of liability under § 3604(f)(1) and (f)(2) for building owners, operators, and managers that neither designed nor constructed the properties at issue. That is an insufficient justification for the delinquent amendment of the complaint.

Permitting the ERC to amend its complaint at this late juncture would cause unjust prejudice to Equity and substantially delay an already aged case. *See Deasy*, 833 F.2d at 42 ("Belated claims which change the character of litigation are not favored."). Several disfavored consequences of the proposed amendment are foreseeable. First, the addition of a new count shortly before the summary judgment stage threatens to squander a considerable portion of the resources that Equity has expended on this litigation in the seven years that have elapsed since the ERC filed suit. As another judge of this court has stated: "A motion to amend may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery." *Sharkey IRO/IRA v. Franklin Resources*, 263 F.R.D. 298, 301 (D. Md. 2009). Although discovery did not begin until April 2007, and the litigation has been stayed at the parties' request for about three years—from early 2010 until now—as antecedent jurisdictional issues have been addressed and the parties have attempted to negotiate a settlement, significant discovery nevertheless has occurred. Equity has expended substantial resources to ascertain which properties were built before the FHA took effect in March 1991, as well as substantial efforts to segregate the properties that it neither designed nor constructed, and it has provided numerous documents to the ERC in connection with that inquiry. If the ERC were permitted to add a count under § 3604(f)(1) and (f)(2), and this court ultimately recognized the enforceability of those provisions against property owners and

managers such as Equity, Equity's labors potentially would be for naught: Equity could face liability for FHA violations at all of its apartment complexes, including properties that it did not design or construct, and also might be liable for violations in buildings constructed before the FHA took effect. If, on the other hand, this court granted leave to amend but ultimately rejected the ERC's new theory, the amendment would prove costly and futile.

Second, and relatedly, the proposed amendment would compel the parties to shelve their pending motions for partial summary judgment and instead to fully brief a motion to dismiss evaluating the viability of the ERC's new count. Equity also has indicated that it would challenge the ERC's standing to assert the new count. Yet the time for motions to dismiss has passed. *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (affirming denial of motion to amend where addition of new claim "on the eve of the deadline for dispositive motions" would have prejudiced the defendant by fundamentally altering the nature of the litigation and requiring the court to reopen discovery). This court entered a scheduling order in August 2009 directing the parties to brief motions for partial summary judgment before the end of April 2010. Those motions have remained unresolved for more than three years as the court addressed the issue of standing and the parties entered settlement negotiations. The parties are now prepared to renew those motions, and the motions are ripe. Adjudication of those motions promises to ensure some headway in this case, and amendment of the complaint would thwart that progress.[2]

Finally, the proposed new count would widen the scope of a suit whose ambit already includes hundreds of properties and would compound the complexity of an already complicated

---

[2] The court has not considered the merits of the unresolved summary judgment motions and refuses Equity's invitation to speculate about the ERC's motives for requesting leave to amend.

and sweeping case. The ERC seeks to supplement the complaint by listing almost 100 new properties for which Equity allegedly is liable under § 3604(f)(1) and (f)(2). To investigate the extent of Equity's alleged noncompliance with the FHA, over the past several years the ERC has conducted walk-throughs of a fraction of the Equity properties at issue in this litigation. The proposed amendment would prolong discovery to enable the ERC to inspect the additional properties that have been identified in the proposed amended complaint, making the case more burdensome for both the parties and the court.

To be sure, "[p]rejudice stemming from requiring a party to engage in additional fact investigation generally only arises when that additional investigation is required on the eve of trial." *Sharkey IRO/IRA*, 263 F.R.D. at 303 (citing *Johnson*, 785 F.2d at 510). In those circumstances courts have often found that the prejudicial effect of a proposed amendment can be assuaged by extending the discovery deadline and granting the defendant sufficient time to investigate the additional facts and legal theories alleged in the amendment. *See Robinson v. GEO Licensing Co.*, 173 F. Supp. 2d 419, 426 (D. Md. 2001). The prejudice inherent in the ERC's proposed amendment, however, is not tied to an impending trial date. As in *Sharkey IRO/IRA*, the prejudice here is tied instead to the "unique length and complexity" of this cumbersome litigation. 263 F.R.D. at 303. It is the province and obligation of this court to ensure that this case remains capable of resolution, and the addition of new legal theories and dozens of additional properties would cause further delay and undercut the progress that has been made to date.

Accordingly, the ERC's motion for leave to amend its complaint to add a new count will be denied. The ERC will, however, be permitted to amend the complaint to excise properties that Equity neither designed nor constructed as well as properties that were constructed before

9

the FHA took effect. Consistent with this court's earlier discovery rulings, the ERC also will be permitted to add new properties to the complaint if the ERC has discovered evidence indicating that Equity is liable for design-or-construction violations at those properties. And finally, the ERC may amend the complaint to correct typographical errors. Once the ERC's revised amended complaint is filed and answered, the court will enter a revised scheduling order permitting the parties to renew their respective motions for partial summary judgment.

## CONCLUSION

For the reasons stated above, the motion for leave to amend will be granted in part and denied in part. A separate Order follows.


June 6, 2013                                              /s/
Date                                              Catherine C. Blake
                                                  United States District Judge